IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERRILYN RADER ) | |
| ) | |
| v. ) | No. 3:04-1010 |
| ) | JUDGE CAMPBELL |
| FLYING J COUNTRY MARKET, ) | |
| INC., et al. ) | |

MEMORANDUM

Pending before the Court is Defendants' Motion for Summary Judgment (Docket No. 38). For the reasons stated herein, Defendants' Motion for Summary Judgment (Docket No. 38) is GRANTED and this case is DISMISSED.

FACTS

Plaintiff Terrilynn Rader filed this action (Docket No. 1) against Defendants alleging employment discrimination based upon gender in violation of 42 U.S.C. §2000, et seq. ("Title VII") and the Tennessee Human Rights Act, Tenn. Code Ann. §§4-21-101, et seq. ("THRA"), and Tennessee state law claims of outrageous conduct and intentional infliction of emotional distress. Plaintiff alleges that Defendants discriminated against her by creating a hostile work environment because of her gender, and that Defendants' actions also constituted intentional infliction of emotion distress in violation of Tennessee common law. In addition, Plaintiff alleges that Defendant, Tony Haynes' ("Haynes") actions against her amount to outrageous conduct in violation of Tennessee common law.

It is undisputed that Plaintiff began her employment with Defendant Flying J Country Market, Inc. ("Flying J") in Fairview, Tennessee in October, 1997 as a buffet attendant at its restaurant in its travel plaza in Fairview, Tennessee (the "Travel Plaza"), and shortly thereafter became a cook in the restaurant (Docket No. 43 at 1). At all times relevant to this lawsuit,

Haynes has been employed by Flying J as the maintenance manager of the Travel Plaza (Docket No. 43 at 2). Plaintiff's supervisor at the Travel Plaza is Jackie Russell ("Russell"), general manager of the restaurant, and Haynes' supervisor is Tony Vincent ("Vincent"), general manager of the Travel Plaza's convenience store (Docket No. 43 at 2).

The facts supporting Plaintiff's complaint involve alleged incidences of cursing at work and derogatory and offensive comments by Haynes directed at Plaintiff and other female employees at the Travel Plaza. The culminating event behind Plaintiff's lawsuit occurred on Thursday, July 15, 2004 when Haynes placed a voodoo doll on the employee bulletin board in the Travel Plaza's kitchen with a razor blade in its throat, pins on its body, and a note attached that read, "Terri Rader Voodoo B____ I do spells also." (Docket no. 43 at 4). After this event, Plaintiff did not report to work for three days (Docket No. 43 at 5). When Plaintiff reported to work on the following Wednesday, she met with the restaurant's district manager, Sam Beale ("Beale") to discuss the voodoo doll incident (Docket No. 43 at 5). Beale apologized to Plaintiff about the doll and said that it was a bad joke that got out of hand (Docket No. 43 at 5). Russell also met with Plaintiff and told her that a co-worker would drive Plaintiff to work at a Flying J travel plaza in Franklin, Kentucky (Docket No. 43 at 5). Plaintiff was told that she was not obligated to go to work at the travel plaza in Franklin, Kentucky, but Plaintiff was glad about the temporary move and thanked Russell (Docket No. 43 at 5). Plaintiff was paid for the three days she missed work because of the voodoo doll incident, and has returned to her position at the Travel Plaza (Docket No. 43 at 5-6).

It is also undisputed that Flying J has a policy prohibiting discrimination and harassment in the workplace and that its policy is contained in its employee handbook which Plaintiff, upon

2

her employment, acknowledged that she had read and understood (Docket No. 43 at 2-3). It is disputed, however, whether Flying J followed the policies contained in its employee handbook.

In response to Plaintiff's complaint, Defendants have filed a Motion for Summary Judgment (Docket No. 38) on Plaintiff's claims of gender harassment under Title VII and the THRA. Defendants allege that Plaintiff's gender harassment claims should be dismissed as a matter of law because Haynes' alleged harassment of Plaintiff was neither based upon her gender nor sufficiently severe or pervasive to create a hostile work environment. Defendants also allege that Plaintiff's claims of gender harassment against Haynes must fail because he was not an "employer" within the meaning of the law. Finally, Defendants allege that Haynes' conduct does not establish a claim for intentional infliction of emotional distress or outrageous conduct under Tennessee law.

## SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. Id.; Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. Meyers, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant.

3

Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. Hopson, 306 F.3d at 432.

ANALYSIS

1. Hostile Work Environment

"Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." Meritor Savings Bank v. Vinson, 477 U.S. 57, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986).[1] A plaintiff may establish a violation of Title VII by proving that discrimination based on gender has created a hostile or abusive work environment. Id.

In order to establish a case of hostile work environment based upon gender, Plaintiff must show that "'(1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon her sex; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) [the employer] knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.'" Valentine-Johnson v. Roche, 386 F. 3d 800, 814 (6th Cir. 2004) (quoting Blankenship v. Parke Care Centers, Inc., 123 F. 3d 868, 872 (6th Cir. 1997)). A hostile work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be

---

[1] Because the analysis of THRA claims essentially tracks claims under Title VII, Plaintiff's THRA claim will be discussed in the context of Title VII. Patterson v. McLean Credit Union, 491 U.S. 164, 185-88, 109 S. Ct. 2363, 2377-78, 105 L. Ed. 2d 132 (1989) overruling on other grounds recognized in, Hamilton v. City of Martin, 129 F. 3d 1264 (6th Cir. 1997); Harper v. BP Exploration & Oil Co., 896 F. Supp. 743, 747 (M.D. Tenn. 1995), aff'd, 134 F. 3d 371 (6th Cir. 1998); Campbell v. Florida Steel Corp., 919 S.W. 2d 26, 31 (Tenn. 1996).

so.  Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 2283, 141 L. Ed 2d 662 (1998).  Not all offensive conduct is actionable as harassment.  Simply teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment.  Id, 118 S. Ct. at 2283-84.  In determining whether alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment, the Court must consider the totality of the circumstances and the following factors: the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance.  Valentine-Johnson, 386 F. 3d at 814.

To substantiate her claims of discrimination, Plaintiff alleges that Defendants discriminated against her because of her gender in the following ways:

1.  Haynes verbally attacked Plaintiff by saying, "This goddamn floor don't look like it's been cleaned all night long, and it's you all's trash that's coming through here, can't you clean this goddamn floor up before somebody else gets in here and see it."  In response to Haynes' alleged attack, Russell said, "Well, he's been upset lately, and just, he doesn't mean anything personally towards you, just — just let it go," and did not investigate the incident or talk to Haynes about his behavior.

2.  Plaintiff's co-worker, Kimberly Lemoine ("Lemoine") complained to management about Haynes, specifically that "Haynes repeatedly referred to women as 'bitches'. ... and "that [] Haynes was very rude to me and had made the comment 'you are to serve me'." Despite these complaints, no action was taken by management to correct the problem.

3.  Haynes walked into the Travel Center's employee break room and said "You all get

5

off your damn asses around here and wipe this table, and you all wouldn't have to live like pigs in this break room." When Plaintiff tried to explain to Haynes that she had just arrived at work, Haynes mumbled under his breath and explained, "I ain't talking to you bitch." Russell's response to reports of this incident was to say, "He's just having a hard time, just ignore him, he doesn't mean anything personally towards you."

4. Numerous other incidents, including cussing at Plaintiff when she accidently dropped a few pieces of trash when taking it to the dumpster, when she accidentally dripped grease on the concrete floor, and when the ice machine was out of bags of ice. The profanity used by Haynes during these incidents included the words, "Goddamn", "Bitches", "Hell" and "Damn".

5. The above referenced incident involving the voodoo doll.

(Docket No. 44 at 1-3).

The Court finds that, while certainly crude and offensive, the conduct relied upon by Plaintiff as the basis of her hostile work environment claim is not sufficiently severe or pervasive to create an objectively abusive or hostile work environment based on gender. This is certainly true of Haynes offensive and discourteous "cussing" of Plaintiff and his other co-workers. Such conduct, while not to be emulated or condoned in the workplace or elsewhere, does not rise to the level of actionable sexual harassment.

In addition, while Haynes' placement of the voodoo doll on the employee bulletin board may reach beyond conduct that could be considered as "merely offensive", the undisputed evidence before the Court is that when management at Flying J became aware of Haynes' actions with respect to the voodoo doll, it addressed the situation as soon as the incident came to its attention. It is well established that a defendant, upon learning of sexual harassment initiated by

one of its employees, is shielded from liability if the response of the defendant to the harassment is adequate and effective. Wathen v. General Electric Co., 115 F. 3d 400, 407 (6th Cir. 1997); Kauffman v. Allied Signal, Inc., Autolite Div., 970 F. 2d 178 (6th Cir. 1992), cert. denied, 506 U.S. 1041, 113 S. Ct. 831 (1992). The Court finds that Flying J's actions in response to its knowledge of the voodoo doll incident constituted prompt and reasonable corrective action calculated to end the alleged harassment. This finding is supported by the undisputed evidence that Flying J promptly met with Plaintiff regarding the incident with the voodoo doll, provided Plaintiff with the option of a temporary, alternative work environment, paid Plaintiff for the three days she missed work after the voodoo doll incident, and promptly apologized to Plaintiff for Haynes' conduct. While Plaintiff asserts that Defendants' actions in response to the voodoo doll incident cannot shield Defendants from liability because of ongoing harassment by Haynes and failure by Flying J to acknowledge or address such continued harassment, Plaintiff has not offered any proof of ongoing harassment, other than an isolated incident of alleged harassment shortly after the voodoo doll incident (Docket No. 43 at 4-6).

Accordingly, the Court finds that Defendants' are entitled to summary judgment on Plaintiff's claims of hostile work environment under Title VII and the THRA.[2]

2. Intentional Infliction of Emotional Distress/Outrageous Conduct

---

[2] With respect to Defendants' argument that Plaintiff's claims against Haynes individually must fail as a matter of law because Haynes is not an "employer" within the meaning of the law, the Court notes that Plaintiff does not appear to contest Defendants' assertion that employees are not individually liable under Title VII or the THRA. Rather, Plaintiff's assertions of liability against Haynes appear related to Plaintiff's allegations of employer liability for co-worker harassment, and not in any way related to the imposition of personally liability against Haynes. To the extent, however, Plaintiff seeks to impose personal liability upon Haynes, the Court notes that there is no individual liability under Title VII. Wathen v. General Electric Co., 115 F. 3d at 404-405.
7

Under Tennessee law, "there are three essential elements to a claim of outrageous conduct: '(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury.'" Bullion v. Ford Motor Co., 60 F. Supp. 2d 765, 772 (M.D. Tenn. 1999) (citing Bain v. Wells, 936 S.W. 2d 618, 622 (Tenn. 1997)). [3]

It is not enough that a defendant acts with an intent which is tortuous or even criminal, or that he intends to inflict emotional distress, or even that his conduct is characterized by malice or a degree of aggravation which would entitle a plaintiff to punitive damages for another tort. Id. Liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Id. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, "Outrageous!" Id.

Here, the Court finds that Defendants' alleged misconduct does not rise to the level of intentional infliction of emotional distress or outrageous conduct. The harassment alleged by Plaintiff does not rise to the level of outrageous and extreme, so as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

---

[3] Under Tennessee law, intentional infliction of emotional distress and outrageous conduct are not two separate torts. Bain v. Wells, 936 S.W. 2d 618, 622, n. 3 (Tenn. 1997).

Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiff's state law claims of intentional infliction of emotional distress and outrageous conduct.

Defendants' Motion for Summary Judgment (Docket No. 38) is GRANTED and this case is DISMISSED.

IT IS SO ORDERED.

                                                                   TODD J. CAMPBELL
                                                                   UNITED STATES DISTRICT JUDGE